## INDIANA GENERAL SERVICE CO. v. Mc-CARDLE et al.

### No. 1366.

District Court, S. D. Indiana, Indianapolis Division.

July 19, 1932.

White & Haymond, of Muncie, Ind., Condo, Van Atta & Batton, of Marion, Ind., and J. F. MacLane, of New York City, for plaintiff.

James M. Ogden, Atty. Gen. for Indiana, for defendants.

Before SPARKS, Circuit Judge, and BALTZELL and SLICK, District Judges.

PER CURIAM.

This is a suit in equity wherein the plaintiff seeks to enjoin the enforcement of an order of the Public Service Commission of Indiana fixing a schedule of rates for electric current furnished by it to the citizens and industrial plants of the city of Marion, Ind.

A petition signed by a number of citizens, who were users of electricity of such city, was filed with the commission on November 3, 1931, seeking a reduction in rates. A copy of such petition was transmitted by letter, signed by the secretary of the commission, to the plaintiff on November 4, 1931, and, after such notice, hearing was had upon the petition at Marion on the 14th day of December, 1931, at which hearing plaintiff was represented by counsel, but offered no evidence. The only evidence introduced at the hearing before the commission, in support of the petition, was the testimony of William J. Guenther, an engineer in the employ of the commission, and of Evan Williams, a field accountant for the commission. The engineer testified, upon examination by a member of the commission, as to the extent of the investigation made by him prior to the hearing, that he had examined the books and records of the plaintiff—which were kept at Muncie, Ind.—and had made an inspection of its physical property. Certain exhibits prepared by him were introduced and read in evidence. The testimony of the accountant was very brief, and was in substance to the effect that the plaintiff had not complied with the orders of the commission with respect to the keeping of its books and records, and as to the filing of its reports.

Upon the evidence introduced at this hearing, which consumed less than one day, the commission issued an order, under date of January 16, 1932, making a general reduction of 20 per cent. in the rates of plaintiff for electric service in such city. A schedule of rates was prepared by the commission to conform with such order, and was to become effective as of February 1, 1932, and to remain in effect until the further order of the commission. The plaintiff was notified of such order approximately ten days prior to its effective date. The order provided that the engineering and accounting departments of the commission should proceed to make a detailed inventory and appraisal of the property of the plaintiff, used and useful in furnishing electric service to the city of Marion, and a detailed audit of the books of the plaintiff as may be pertinent for the fixing of a schedule of rates for such city. The evidence disclosed at the hearing upon plaintiff's application for an interlocutory injunction that the engineers and accountants of the commission had already begun, and were at that time engaged in, such appraisal and audit.

The bill of complaint in the instant case was filed on January 29, 1932, and a temporary restraining order was issued under date of January 30, 1932. Hearing was had by a statutory court organized pursuant to title 28, United States Code Annotated, § 380, upon the application of plaintiff for an interlocutory injunction, notice having been given as provided in such section. Special findings of fact and conclusions of law were filed in compliance with equity rule 70½ (28 USCA § 723).

Plaintiff generates, transmits, and distributes electric power throughout seven counties in Northeastern Indiana by means of an interconnected system consisting of generating stations, transmission lines, and distribution systems. It has filed, and maintained on file with the commission, as required by law, schedules of rates for electric service, and has, from time to time, revised its rates with the approval of the commission. In the month of April, 1931, it filed with the commission a schedule of rates, which reduced those previously in effect, to a large number of its consumers. Such schedule was placed in effect in all cities and towns served by it, and reduced its revenues from the class of service affected thereby in an approximate sum of $135,000 per annum. Following this reduction, the plaintiff, in September, 1931, put into effect a general commercial lighting

schedule and a material reduction in one of its principal power schedules, available throughout the entire territory served by it, which resulted in a further annual reduction in its revenues of approximately $25,000.

The plaintiff supplies approximately twenty-one cities and towns, the inhabitants and industrial plants thereof, as well as rural districts adjacent thereto, with electric current for lighting, heating, power, and other purposes. Its entire system is operated as a unit, and it is the contention of plaintiff that the value of its entire system must be the basis for rate-making purposes, even though the commission has under consideration a schedule of rates for one city only. Upon that question this court has decided adversely to the contention of plaintiff; that is, that a city is the unit, under the law in Indiana, for the purpose of fixing a schedule of rates for such city, and the value of the property, used and useful, in supplying electric current for such city, is the value upon which the utility is entitled to a fair return. Wabash Valley Electric Company v. Frank T. Singleton et al., 1 F. Supp. 106.

The commission rightly took the position, therefore, that the city is the unit for the purpose of determining the value of plaintiff's property in fixing a schedule of rates for Marion.

In making a general reduction of rates of 20 per cent., the commission proceeded under section 122 of the Shively-Spencer Utility Act of Indiana, section 12795, Burns' Ann. St. 1926, which reads as follows: "The commission shall have power, when deemed by it necessary, to prevent injury to the business or interests of the people, or any public utility of this state, in case of any emergency, to be judged of by the commission, to temporarily alter, amend, or with the consent of the public utility concerned, suspend, any existing rates, schedules and order relating to or affecting any public utility or part of any public utility in this state. Such rates, so made by the commission, shall apply to one or more of the public utilities in this state, or to any portion thereof, as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

In applying this section to the instant case, the commission, in its order, said: "It appears to this Commission, in view of the evidence submitted in this cause as to the excessive earnings of the respondent utility in the city of Marion, and in view of the economic depression existing in the city of Marion and elsewhere, that a situation such as that contemplated by section 122 of the Public Service Commission Act exists at this time in this cause."

In other words, it is the theory of the commission that under section 122, supra, it has the right to find that an emergency exists and to reduce the rates to meet the requirements of such emergency. It is well known that rates have been increased by the commission for the purpose of meeting an emergency. This was generally true during the World War and immediately subsequent thereto.

Under section 122, supra, the commission has authority to find, upon proper hearing, that an emergency exists, and either increase or reduce the rate in accordance with such emergency, as shown by the evidence in such case. Such rate cannot be reduced, however, to such an extent as to deprive the utility of a fair and reasonable return upon the value of its property, used and useful, in supplying the utility to the city or town under consideration. Neither can it increase the rate so as to permit the utility to receive more than a reasonable return upon the value of its property. A hearing must be held by the commission, and any emergency order increasing or reducing rates must be based upon evidence sufficient to justify such increase or reduction. The question, therefore, to be determined in the instant case is whether or not the issuing of an emergency order reducing plaintiff's rates 20 per cent. in the city of Marion will, under the evidence, amount to confiscation of its property in violation of the Fourteenth Amendment to the Constitution of the United States.

This is not a final hearing, but only upon petition of plaintiff for an interlocutory injunction, and therefore proof need not be as complete as upon a final hearing. All that is necessary is that plaintiff show that it is prima facie entitled to an injunction; that the injury to plaintiff will be certain and irreparable if the application for an interlocutory injunction be denied, and, if the injunction be granted, that the injury to the opposing party, even if the final decree be in its favor, may be adequately indemnified by bond. The Supreme Court of the United States has spoken decisively upon this question in Prendergast v. New York Telephone Company, 262 U. S. 43, 43 S. Ct. 466, 469, 67 L. Ed. 853, as follows:

"It is well settled that the granting of a temporary injunction, pending final hearing,

116

is within the sound discretion of the trial court; and that, upon appeal, an order granting such an injunction will not be disturbed unless contrary to some rule of equity, or the result of improvident exercise of judicial discretion. Meccano, Ltd., v. John Wanamaker, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822; Love v. Atchison Railway, supra [C. C. A.], 185 F. 321, 331, and cases there cited. Especially will the granting of the temporary writ be upheld, when the balance of injury as between the parties favors its issue. Amarillo v. Southwestern Telephone Co. (C. C. A.) 253 F. 638, 640, 165 C. C. A. 264. Here the Commission had prescribed temporary rates which were found to be confiscatory, which were to continue in effect pending the final determination of the Commission after its investigation had been completed; and no date had been fixed for the completion of this investigation or the final hearing. The Company meanwhile could only be protected from loss by injunction; while, on the other hand, its subscribers were protected by the bond which was required for the return of the excess charges collected if the injunction should be thereafter dissolved. There was no necessity in the particular situation presented for any test period of the new rates."

This rule has more recently been stated by the Supreme Court in Ohio Oil Company v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972.

In the instant case, the order of the commission is temporary, that is, to be in force and effect until a complete appraisal and audit may be made of plaintiff's property, and a final hearing had. It is to be in full force and effect until the further order of the commission. An investigation was ordered by the commission, but no date was fixed for its completion or for the final hearing.

■ Upon the evidence adduced at the hearing upon plaintiff's application for an interlocutory injunction, a general reduction of 20 per cent., as provided in the emergency order of the commission, will be prima facie confiscatory in its effect upon plaintiff's property, used and useful in the supplying of electric current to the city of Marion, and its inhabitants. If the schedule of rates, as provided in such emergency order, becomes effective, pending final hearing, it prima facie will deprive plaintiff of its property without due process of law, and deny to it the equal protection of the law in violation of the Fourteenth Amendment to the Constitu-

tion of the United States. The injury to plaintiff will be certain and irreparable, unless an interlocutory injunction is issued. If plaintiff is compelled to accept the rates as fixed by the emergency order of the commission, there is no way by which it can be reimbursed in the event the commission should finally determine that such reduction is excessive. On the other hand, plaintiff was required to, and did, furnish a bond, upon the issuing of the restraining order, conditioned for the return to the subscribers of all excess charges collected, if such restraining order should be dissolved. It will further be required to furnish a good and sufficient bond to be approved by the court upon the issuing of the interlocutory injunction, conditioned as provided in the bond now in force.

An interlocutory injunction will therefore be granted, upon condition that plaintiff furnish a bond in the sum of $100,000, conditioned upon the return to the subscribers of all excess charges collected, in the event that such injunction is dissolved upon final hearing.

A decree will be prepared accordingly.