CARROLL PERFUMERS, INC. *v.* STATE OF INDIANA.

[No. 26,750. Filed April 29, 1937. Rehearing denied
September 21, 1937.]

*Morris, Newkirk & Hasley,* for appellant.

*Omer Stokes Jackson,* Attorney-General, *James D. Sturgis, Glen L. Steckley,* and *Patrick J. Smith,* Deputy Attorneys-General, for the State.

HUGHES, J.—On the 6th day of June, 1935, the State of Indiana filed an affidavit against Carroll Perfumers, Inc., the appellant, charging it with operating in the County of Allen, State of Indiana, a drug store, without first having obtained a permit so to do from the Indiana Board of Pharmacy. On December 3rd, 1935, the appellant pleaded not guilty to the charge and the cause was submitted to the court for trial without the intervention of a jury, and after hearing the evidence, the appellant was found guilty as charged and judgment rendered on the finding.

Prior to the trial, the appellant filed a motion to quash the affidavit which was overruled. Appellant also filed a motion in arrest of judgment which was overruled. Likewise the motion of appellant for a new trial was overruled.

The errors relied upon for reversal are as follows:

1. The court erréd in overruling the motion of appellant to quash the affidavit.

2. The court erred in overruling the motion in arrest of judgment.

3. The court erred in overruling the appellant's motion for a new trial.

The reasons assigned for the motion for a new trial are as follows:

1. The finding of the court is contrary to law.

2. The finding of the court is not sustained by sufficient evidence.

3. The court erred in overruling defendant's motion made at the close of plaintiff's evidence for a finding that defendant was not guilty as charged.

The affidavit is predicated upon Sec. 1 of Chap. 40 of the Acts of 1927 (§63-1201 Burns 1933, §13297 Baldwin's 1934), and is as follows, omitting caption:

"Oscar E. Russell, being duly sworn upon his oath says: That on or about the 23rd day of April,

A. D., 1935, at the County of Allen and in the State of Indiana, Carroll Perfumers, Inc. did then and there unlawfully operate and conduct and maintain a drug store without first having obtained a permit so to do from the Indiana Board of Pharmacy, contrary to the form of the statute in such case made and provided."

Sec. 1 of said Act is as follows:

"From and after the first day of July, 1927, it shall be unlawful for any person, firm, corporation or co-partnership to operate, maintain, open or establish any drug store, pharmacy, pharmacy department or apothecary shop in this state without first having obtained a permit so to do from the Indiana Board of Pharmacy."

It is first insisted by appellant that the motion to quash the affidavit should have been sustained for the reason that the facts stated in said affidavit do not constitute a public offense and that said affidavit does not state the offense charged with sufficient certainty. We can not assent to this contention of the appellant.

The appellant contends that the statute does not define the term "drug store" and does not specify any test or standard by which a general merchant, or any other person, can determine for himself whether or not he is operating a drug store. We do not think there is any such mystery about the term "drug store"; no more so than a grocery, hardware, or jewelry store. A "drug store" is a place where drugs are sold. A drug is defined to be "any substance used as a medicine, or in the composition of medicines for internal or external use." Webster's New Int. Dic. In this country, as said in the case of *State* v. *Clinkenbeard* (1910), 142 Mo. App. 146, 125 S. W. 827, "the business of pharmacist, or apothecary or druggist is all one, . . . so that in popular speech all three are used interchangeably as practically synonymous." They are so defined in Web-

ster's New Int. Dic. and pharmacy is defined as "a place where medicines are compounded or dispensed; a drug store; an apothecary shop."

A drug store or apothecary shop is one of the oldest known places of business. In the 25th verse of Chap. 30 of Exodus, we find the following:

> "And thou shalt make it an oil of holy ointment, an ointment compounded after the art of the apothecary."

We also find that in the time of Henry VIII, laws were enacted relative to the status of apothecaries and pharmacies, and the following was a rule for their guidance:

> "His garden must be at hand, with plenty of herbs and seeds and roots. He must read Dioscorides. He must have mortars, pots, filters and boxes clean and sweet. He must have two places in the shop, one most clean for physic and the base place for chirurgic stuff. He is neither to increase nor diminish physicians' prescriptions, he is neither to buy or sell rotten drugs; he is only to meddle in his own vocation and to remember that his office is only to be the physicians' cook."

Vol. 21 Encyc. Britannica, p. 355.

We again find in Shakespeare's time, the apothecary and his shop were well known and in Act V, Scene I of Romeo and Juliet, the shop is described as follows:

> "And in his needy shop a tortoise hung,
> An alligator stuff'd, and other skins
> Of ill-shap'd fishes; and about his shelves
> A beggarly account of empty boxes,
> Green earthern pots, bladders, and musty seeds,
> Remnants of packthread, and old cakes of roses,
> Were thinly scatt'd, to make up a show."

And when Romeo applied to the apothecary for certain drugs, the apothecary replied:

> "Such mortal drugs I have; But Mantua's law
> Is death to any he that utters (disposes) them."

We thus see that centuries ago, drug stores and apothecary shops were known and regulated by law and well recognized places of business. They have come down to us through the ages and are found in large numbers in every city of the nation.

Sec. 5 of the Acts of 1927 (§63-1205 Burns 1933, §13301 Baldwin's 1934) gave the board of pharmacy the power to prescribe and promulgate such rules and regulations as may be deemed necessary for the proper enforcement of the Act. We think there is no question that the legislature had authority to delegate this power to the board of pharmacy. *Blue* v. *Beech* (1900), 155 Ind. 121, 56 N. E. 89. The board under such authority has promulgated certain rules and regulations. Rule 1 defines a drug store as follows:

"A drug store, pharmacy, pharmacy department or apothecary shop shall be defined to mean any place where United States Pharmacopoeia and National Formulary preparations and drugs, chemicals and medicines of non-secret composition which are not advertised to the general public by the manufacturer and are not considered as patent or proprietary medicines, but classified as prescription or pharmaceutical specialties are carried in stock and sold or intended for sale at retail or where physicians' prescriptions are compounded and potent drugs dispensed."

The appellant, in its brief, asks the question—"What items can a store offer for sale without becoming a drug store?" The answer to this question is found in Sec. 12 of the Act (§63-1211 Burns 1933, §13307 Baldwin's 1934), wherein it is said:

"This act shall not be construed to affect pending litigation and nothing in this act contained shall apply to, nor in any manner interfere with the business of a general merchant in selling any of the following articles, to wit: Medicines of secret composition, and which are advertised to the general public, and popularly known as Patent or Pro-

prietary Medicines, providing said medicines are not poisonous. Also concentrated lye, sodium carbonate, sodium bicarbonate, tobacco, spices, perfumes, flavoring extracts, borax and the following articles in original and unbroken packages, bearing the label of a known pharmaceutical manufacturer, wholesale druggist, or of a registered pharmacist, to wit: Hive syrup, spirit of camphor, tincture of arnica, epsom salt, quinine sulphate, compound cathartic pills, paris green, london purple, white hellebore, and such insecticides, disinfectants, dyestuffs and other chemicals as may be allowed by the board of pharmacy."

So it is clearly seen from the above section what one may sell and not violate the act in question. We think the terms of the statute in question are sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. The language of the affidavit conforms to the statute and we think sufficient. In *Benham* v. *State* (1888), 116 Ind. 112, 115, 18 N. E. 454, the appellant was prosecuted for practicing medicine without a license, under an affidavit conforming to the language of the statute. With reference to the motion to quash, the court said:

"The offense charged against appellant herein is purely a statutory offense, that is, it was created and defined and its punishment prescribed by the provisions heretofore quoted by the above entitled Act of April 11, 1885. In such a case it has been held by this court as a general rule that an indictment or information will be sufficient to withstand a demurrer to quash if it charges the offense in the language of the statute or in terms substantially equivalent thereto."

See *Melville* v. *State* (1910), 173 Ind. 352, 90 N. E. 467; *Beyer* v. *State* (1927), 199 Ind. 647, 158 N. E. 477; *Hill* v. *State* (1936), 102 Ind. App. 568, 2 N. E. (2d) 227.

This motion to quash was properly overruled.

It is further contended by the appellant that the Act did not intend to prohibit corporations from operating

drug stores as one of the requisites for obtaining a permit is that the applicant must be of good moral character and a corporation can not show itself to be a person of good moral character. Sec. 1 of the Act says: "That from and after the first day of July, 1927, it shall be unlawful for any person, firm, corporation or co-partnership to operate, maintain, open or establish any drug store, pharmacy department or apothecary shop in this state without first having obtained a permit so to do from the Indiana board of pharmacy." It is further provided in Sec. 2 that: "The application for a permit shall be made on a form which shall be prescribed and furnished by the board of pharmacy and shall set forth the name of the owner, manager, trustee, lessee, receiver or other person desiring such permit, the location, including the street number of such drug store, pharmacy . . . and such other facts as will show the applicant to be a person of good moral character."

It is seen from Sec. 1 that corporations are specifically given the right to make application and secure a permit to maintain and operate a drug store, pharmacy or apothecary shop. Corporations can only act through their officers, agents or representatives and if they present such facts to the board of pharmacy that they are of good moral character, the board would be justified in granting the permit to the corporation.

The appellant states that a corporation can only be prosecuted when distinctly provided by statute, but it does not say that in the instant case it is not so provided. It is so provided in Sec. 10 of the act (§63-1210 Burns 1933, §13306 Baldwin's 1934), wherein it is said: "Any person, firm, corporation . . . who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than $25 nor more than $100 . . ." And in Sec. 9-1013 Burns 1933, §2138 Bald-

win's 1934, it is provided how a corporation is brought into court when an indictment is returned or affidavit filed.

It is insisted by the appellant that the evidence in the instant case is insufficient to sustain the finding of the court. It is the rule that a trial court has the ██ right and is justified in drawing all reasonable inferences from the evidence introduced. And it is also well settled that if there is any evidence to sustain the finding of the trial court, this court will not disturb the finding. There was evidence in the instant case to sustain the finding of the court. There was no error in overruling the motion for a trial.

Finding no available error, the judgment is affirmed.