JOS. GUIDONE'S FOOD PALACE, INC. *v.* PALACE PHARMACY, INC. ET AL.

[No. 369 S 57. Filed June 27, 1969. No petition for rehearing filed.]

*Alan H. Lobley, Ice Miller Donadio & Ryan,* of Indianapolis, for appellant.

*Forrest D. Rau,* of Indianapolis, for appellee.

ARTERBURN, J.—This action was brought by plaintiff-appellee,[1] who was a lessee in a small Indianapolis shopping center against the lessor, Gardner and Guidone, Inc., and another lessee, appellant, to enjoin alleged violations by the appellant of the covenants in restraint of trade contained in the leases. The trial court granted the appellee a temporary injunction pending the trial of this cause. From this order, the appellant appeals.

The evidence shows that on September 1, 1965, Palace Pharmacy entered into a ten year lease with Gardner and Guidone, Inc., which lease contained the following provision:

"Lessee agrees that during the term of this lease or any renewal thereof they shall not at any time have for sale *any food or related grocery or meat products,* and Lessor agrees not to permit the sale of *drugs or cosmetics* by others on their premises" (our emphasis).

1. The term appellee in this opinion refers only to Palace Pharmacy, Inc. Gardner and Guidone, Inc. are joined as appellees only because they failed to appeal the judgment rendered by the trial court.

Under this lease Palace Pharmacy began operating as a retail drug store in March, 1966, which operations have continued to the present time.

Jos. Guidone's Food Palace, Inc., (herein referred to as Appellant) was originally owned by the same Joseph Guidone who was connected with Gardner and Guidone, Inc. The grocery store entered into their lease on October 9, 1965, and commenced business in March, 1966. Guidone sold his stock in the grocery store to Scot Lad Foods, Inc., in October, 1967. A subsequent lease was entered into October 25, 1967, for a term of fifteen years. The lease contained the following provision:

"CONDUCT OF BUSINESS BY LESSEE

"SECTION 3.01. *Use of Premises.*

Lessee shall have the right to use the Leased Premises for the purpose of operating a food store and supermarket on an exclusive basis within the shopping center of which the Leased Premises are a part and for the storage of materials used in the operation of said food store and supermarket; *and for the sale of health and beauty aids, when not inconsistent with leases in effect at the date hereof between Lessor and other tenants of the shopping center* of which the Leased Premises are a part. In addition, Lessee shall have the right to use the Leased Premises for any lawful use; provided, however, that Lessee shall not use said Leased Premises for the operation of a business which would be substantially similar to a business then being operated by another tenant in the shopping center of which the Leased Premises are a part. A 'food store', as used in this paragraph shall not be construed to include a restaurant, ice cream store or related business' where food is sold for consumption or carry-out in a cooked form" (Our emphasis).

The Appellant admitted in the trial court that it had knowledge of the lease between Palace Pharmacy, Inc., and Gardner and Guidone, Inc., at the time the lease was executed on October 26, 1967.

In February, 1968, after the sale of the grocery store by Guidone to Scot Lad, the management of the Food Palace

installed a section of "health and beauty" aids. These items included: Shampoos, hair sprays, tooth-paste, mouthwashes, denture preparations, shave creams, after shave and preshave items, hemorrhoid preparations, antiseptics, anti-acids, analgesics, cold preparations, razor blades, alcohol, band aids, deodorants, skin preparations, laxatives, sedative items, douche powders and hair bleaching preparations. The manager of the Palace Pharmacy testified that following the incorporation of these items by the Food Palace there was a decline in the increasing volume of sales of the Palace Pharmacy. The manager also testified that there was no change at this time in his method of doing business in the drug store.

Appellant admits selling the items but contends the items come under the heading of "the sale of health and beauty aids", and not in the category of "drugs and cosmetics". To support its contention, the Appellant cites *Carroll Perfumers, Inc. v. State* (1937), 212 Ind. 455, 7 N. E. 2d 970. We think that case is distinguishable from the one presently before us. *Carroll Perfumers, Inc., supra,* was concerned with what constituted a drug store, as defined by statute. It was necessary to arrive at this determination in order to answer the question of whether a license from the State Board of Pharmacy was required. The opinion is concerned only with the definition of drug store under a specific act. The opinion does not say that "Patent or Proprietary Medicines" are not drugs, only that the Act (Burns' §63-1201, *et seq.*) did not require that a license be obtained in order to sell such merchandise. In this connection it is interesting to note that in various statutory provisions, the term "drug or medicine" has been construed to include aspirin, laxatives, tincture of iodine, spirits of camphor, and tincture of arnica. 25 Am. Jur., *Drugs, Narcotics, and Poisons,* §1, p. 284.

We feel that the definition given to the word "drugs" as used in the lease, should not be limited to a statutory definition embraced in the case of *Carroll Perfumers, Inc. v. State,*

*supra,* but rather given the ordinary and broader generic meaning of the term.

> "A drug is a substance that is used as a medicine. As was said in *State v. Baker,* 229 N.C. 73, 48 S.E.2d 61, 66, '. . . a 'drug' is any substance used as a medicine or in composition of medicines for internal or external use, and a 'medicine' is any substance or preparation used in treating disease. (Citing cases and authorities). Hence, the term 'drugs' embraces patent or proprietary remedies possessing or reputed to possess curative or remedial properties sold and used for medicines. This is ture irrespective of whether such remedies contain poisonous ingredients or whether they may be purchased without any direction from a physician, or whether they can be obtained at retail stores generally. Calling drugs domestic or family remedies does not rob them of their character as medicines. . . . The test is whether it is administered or employed as a medicine. . . ." *Kelly v. Carroll* (1950), 36 Wash. 2d 482, 219 P. 2d 79, 83, 19 A. L. R. 2d 1174.

The Appellant uses the case of *Mennen Co. v. Kelly,* 137 F. 2d 866 (3rd Cir. 1942) to define cosmetics. An examination of that case, however, shows that it was concerned only with whether Mennen Antiseptic Oil was a cosmetic within the meaning of the Revenue Act taxing cosmetics. The definition given in that case was that a cosmetic was "a preparation intended to beautify or improve the complexion, skin 'or hair'." The definition is tempered by a caveat: "Like many definitions given at large this one may prove both too wide or too narrow when applied in specific situations, although it was satisfactory enough in the case cited." *Mennen Co. v. Kelly, supra,* 867.

The reliance Appellant places on the language to the effect that a cosmetic is an article of decorative value and that cosmetics create "fictitious (artificial) appearances" is misleading and is too vague to be of use to us in the present case.

In a case with similar facts, it was held that dentifrices, hair tonics, denture powders, shampoos and shaving preparations were cosmetics. The court on appeal in that case said:

". . . The view expressed by the trial court was a reasonable one, adopted in the exercise of its function of weighing and appraising the evidence. It is not our function to try to disturb that determination even if we were inclined to take the opposite view, which we are not." *Hildebrand v. Stonecrest Corp.* (1959), 174 C.A. 2d 158, 344 P.2d 378, 383.

Viewing the items contained in the trial court's temporary injunction, we believe that the classification of the items as "drugs or cosmetics" was reasonable and was not an abuse of the trial court's discretion.

The Appellant would urge the court to classify the items as health and beauty aids and not as drugs or cosmetics. This Court knows of no definition or classification which would allow a separation of health and beauty aids from drugs or cosmetics. The lease itself contains a provision that the Food Palace can only sell the health and beauty aids "when not inconsistent with the leases in effect". The right to sell health and beauty aids was not an unequivocal right, but a conditional right based upon a showing that their sale did not violate any other lease. Such conditional right was lost by the lessor agreeing to prohibit the sale of drugs and cosmetics. This Court will not be swayed in its consideration by different labels which are placed on items with no valid distinction shown between the categories.

The Appellant further alleges that even if the lease was violated, the appellee is estopped from recovering. The Appellee admits selling Metrecal, Sego, ice cream, dog food, candy, soft drinks, Kool-aid, unpopped popcorn, paper towels and napkins, detergents, hand soaps, window polish and drain cleaners. The Appellant urges that this violates the clause in the lease which prohibits the sale by appellee of any food or related grocery or meat product. Therefore, it is appellant's position that appellee's "unclean hands" would estop him from recovering.

It is apparent under the terms of the leases of the respective parties that there could be an overlapping of items that both could lawfully sell outside the field of merchandise specifically restricted. Whether or not the appellee has been guilty of the violations, we need not at this time determine, since the question was not put at issue by any pleading in the hearing on the temporary injunction or interlocutory order. It may be that such an issue can properly be presented in the hearing on the permanent injunction. The rules governing the granting of a temporary injunction or an interlocutory order are different from those which would prevail in the hearing on the permanent injunction. It is not necessary that the proof be as complete and convincing in the granting of a temporary injunction or interlocutory order as that required at the time of the determination of the permanent injunction. It has been said that the granting of an interlocutory order is within the sound discretion of the trial court and the petitioner need only make out a prima facie case.

"Upon an application for an interlocutory order granting an injunction, it is not necessary that such a case should be made out as would entitle the plaintiff to relief at the final hearing. It is sufficient if the court finds upon the pleadings and evidence such a state of facts as makes the transaction a proper subject for investigation in a court of equity." *Tuf-Tread Corp. v. Kilborn* (1930), 202 Ind. 154, 156, 172 N. E. 353; *Indiana General Service Co. v. McCardle*, 1 F. Supp. 113, (1932 D. C. S. D. Ind.)

"It is well settled that the granting of a temporary injunction rests in the sound discretion of the trial court judge and the 'exercise of this discretion will not be interefered with by this court unless it is shown that the action of the trial court was arbitrary or constituted a clear abuse of discretion'" (citing cases). *Rosenberg v. Village Shopping Center, Inc.* (1968), 251 Ind. 1, 238 N.E.2d 642, 650.

We therefore hold that all that is necessary in order to obtain a temporary injunction is the establishment of a prima facie case stating facts authorizing such relief, which  the appellee-drug store did in this case.

Under the result we reach herein it is unnecessary for us to discuss the cross-error presented by the appellee.

It appears that there has been no abuse of discretion by the trial court in the granting of the interlocutory order appealed from in this case, and the judgment thereon is affirmed.

DeBruler, C. J., Hunter and Givan, JJ., concur. Jackson, J., concurs in result.

NOTE.—Reported in 248 N. E. 2d 354.