FILED

Jun 26 2019, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kiel Stone,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 26, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2427<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable David J. Certo,<br>Judge<br><br>Trial Court Cause No.<br>49G12-1802-CM-7004 |

**Najam, Judge.**

## Statement of the Case

[1]   Kiel Stone brings this interlocutory appeal from the denial of his motion to dismiss the State's charging information. The State charged Kiel with seven counts of harassment, each a Class B misdemeanor, for phone calls Stone had

made to staff members of the Indiana General Assembly and to staff members of the Indiana Secretary of State. Stone raises a single issue for our review, which we restate as the following two issues:

> 1. Whether the trial court erred when it denied Stone's motion to dismiss the State's charges under the First Amendment to the United States Constitution.

> 2. Whether the trial court erred when it denied Stone's motion to dismiss the State's charges under Article 1, Section 9 of the Indiana Constitution.

[2] We affirm.

## Facts and Procedural History

[3] In 2016, Indiana State Capitol Police officers opened an investigation into Stone after reports from legislative staff members of numerous, daily phone calls Stone had been making to them. According to one of those staff members, when on the phone, Stone would "talk[] in circles," was generally "angry," and would "verbally escalate[] to swearing and yelling" at them. Appellant's App. Vol. II at 11-12. On May 4, Stone left one staff member a voicemail in which he "demean[ed] the staff members of various offices, calling them morons and idiots," and stated that he was "going to publicly beat the crap out of your office" and "verbally assault the office." *Id.* at 12 (quotation marks omitted). However, the officers did not pursue that investigation further because the legislative staff members did not obtain requested "supporting information and evidence" the officers deemed necessary. *Id.* at 14.

[4] On May 24, 2017, Stone contacted Lawrence Hemphill, a legislative assistant to Indiana Senator Mike Bohacek and then-Senator Mike Delph, and requested information relating to a Whitley County traffic violation deferral program and pro bono legal assistance. Hemphill responded to Stone's requests within one hour.

[5] Shortly thereafter, Stone called Hemphill and left a voicemail. In that voicemail, Stone said he was "irritated" with Hemphill; Stone "raised his voice . . . and then accused Hemphill of playing the 'you didn't get my driver's license game'"; Stone told Hemphill that Stone had already "tried every lawyer" on the pro bono list; Stone "began ranting about how he has called different elected officials and voiced his displeasure in how he is allegedly treated by bodies of government"; Stone "accused Hemphill of receiving money from the [CIA] and allege[d] that someone has been perpetuating a conspiracy against him for the last ten years"; Stone "asked Hemphill what he has to do, who he has to talk to[,] or who he has to bribe to be treated fairly in the State of Indiana"; Stone said "what Hemphill is doing is illegal"; and Stone ended the voicemail "by calling Hemphill a[] 'f[***]ing little worm.'" *Id.* at 15.

[6] On September 27, 2017, Stone again called Hemphill and left a voicemail. In that voicemail, Stone stated that he had "'had enough of your bullsh[*]t[,] sir'"; Stone "accused Hemphill of directing [Stone's] call to voicemail"; Stone said that "Hemphill is an agent of the government and again accused Hemphill and [Senator] Bohacek . . . of working for the [CIA]"; Stone "accused Hemphill of not treating him fairly"; Stone stated that "he [Stone] is running for the 'Indiana

U.S. Senate'"; Stone again accused Hemphill of being "an agent of the government"; Stone threatened Hemphill with "legal action"; Stone "stated that he wants to have a conversation with Hemphill in which he is treated respectfully" and they "'act correct'"; and Stone told Hemphill that "the way he is being treated by Hemphill is inappropriate and illegal." *Id.* at 15-16.

[7] On January 11, 2018, Stone called Mackenzie Nicol of the Indiana Secretary of State's Constituent Services Office at the Indiana Statehouse approximately fifteen times in succession before leaving a voicemail. In that voicemail, Stone stated that staff members for the Indiana Secretary of State had "refused to help me" and "hung up on me." *Id.* at 22. He then stated that "it[ i]s very apparent that the Secretary of State's Office is treating [me] in this manner because these individuals . . . [are] involved in the conspiracy" involving the CIA. *Id.* He further asserted that, if the Secretary of State and her staff members "are not working for the CIA, are not involved in heroin smuggling[] or cocaine smuggling and murdering people . . . then why wouldn't you help . . . ." *Id.* at 23.

[8] On January 30, 2018, Stone called Hemphill and left another voicemail, which was approximately five minutes long. In that voicemail, Stone, among other things, accused Hemphill of being "discourteous . . . over . . . the course of about a year"; of acting illegally toward Stone; of being "Agent Hemphill of a governmental agency such as the CIA"; of needing to "check yourself into a psychiatric hospital"; and of being an "idiot[]." *Id.* at 17-18. Stone also told

Hemphill that Stone was preparing a "massive federal conspiratorial lawsuit" against Hemphill and other State employees. *Id.* at 17.

[9] That same day, Stone also called Grant Beanblossom, an intern for Senators Bohacek and Delph. Stone asked for Hemphill, and, when Beanblossom informed Stone that Hemphill was not available, Stone "accused [Beanblossom] of shielding [Hemphill] from talking." *Id.* at 19. Stone then "transitioned to talking about an issue with police stops and identification." *Id.* After about five minutes, Beanblossom informed Stone that he "needed to go," and Stone responded that Beanblossom was "being extremely rude to him" and "taking part in a conspiracy against him." *Id.*

[10] Also on January 30, Stone called Tracy Mann, the administrative assistant to then-Senator David Long. Stone "was angry and informed her that Indiana Senators and [legislative assistants] would not help him or answer his questions." *Id.* He then began "speaking . . . about a conspiracy to kill him, that the Indiana State Police "has tried to kill him . . . over one hundred times," that the "CIA . . . tried to poison him," and that there has been a conspiracy against him since 2012. *Id.* During the phone call, Stone "was screaming" and "cursing." *Id.*

[11] After Mann ended that phone call, Stone immediately called Jen Carlton, the Indiana Senate Deputy Chief of Staff. Stone left Carlton a nearly five-minute voicemail in which he stated, among other things, that "no one will speak to

him or provide him with assistance and that it is all part of a conspiracy to kill him." *Id.* at 19-20.

[12] On February 28, the State charged Stone with seven counts of harassment under Indiana Code Section 35-45-2-2(a) (2018), each a Class B misdemeanor, for the seven phone calls he made between May 24, 2017, and January 30, 2018. Thereafter, Stone moved to dismiss the seven charges on the ground that each charge was predicated on protected political speech. In particular, in his memorandum in support of his motion to dismiss, Stone asserted that his speech was protected under the First Amendment because "[a]ll of the alleged phone calls . . . were made on [phone] lines specifically intended for communication between the people and their elected representatives" and the State "is attempting to restrict Stone's speech on the basis of his speech's content." *Id.* at 72. Similarly, under Article 1, Section 9, Stone argued that his speech was unambiguously political and therefore protected because the speech did not rise to the level of tortious behavior.

[13] In its response to Stone's motion to dismiss, the State argued that Section 35-45-2-2 "criminalizes conduct, not speech"; that, therefore, "a First Amendment analysis premised on an alleged restriction of the freedom of speech is inapplicable"; and that the content of Stone's speech was only relevant, if at all, "in determining the intent of the speaker." *Id.* at 86-87. As a secondary argument, the State asserted that, even if "[p]ublic phone lines to state lawmakers are a public forum, . . . the regulation of [Stone's] speech is appropriate" under the First Amendment because that regulation "is content-

neutral." *Id.* at 88. And, under Article 1, Section 9, the State informed the trial court that, while it "concedes that [Stone's] speech was political," the charges were still valid because Stone's speech "did inflict a particularized harm on the victims." *Id.* at 90.

[14] The trial court held a hearing on Stone's motion to dismiss, at which the parties argued only the issue of whether, under Article 1, Section 9, Stone's conduct rose to the level of a tort. Following that hearing, the trial court denied Stone's motion to dismiss. The court then certified its order for interlocutory appeal, which we accepted.

# Discussion and Decision

## *Standard of Review*

[15] Stone appeals the trial court's denial of his motion to dismiss. A motion to dismiss under Indiana Trial Rule 12(B)(6) challenges only the legal sufficiency of the charges, which presents a question of law that we review *de novo*. *See Ward v. Carter*, 90 N.E.3d 660, 662 (Ind. 2018). We may affirm the trial court's judgment under Trial Rule 12(B)(6) on any basis supported by the record. *See id.* A motion to dismiss under Trial Rule 12(B)(6) is appropriate only when "the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015) (quotation marks omitted).

[16] Stone asserts that the State's charges against him seek to penalize him for speech that is protected under both the First Amendment to the United States

Constitution and Article 1, Section 9 of the Indiana Constitution. We address each argument in turn.

### *First Amendment*

[17] We first address Stone's argument that the State's seven harassment charges against him are based on protected political speech under the First Amendment. As the Indiana Supreme Court has explained:

> The First Amendment's command that "Congress shall make no law . . . abridging the freedom of speech" has been incorporated into the Fourteenth Amendment and as such applies to the State of Indiana. *Near v. Minnesota*, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). First Amendment analysis begins by looking at the forum the speaker seeks to employ, because "the standard by which limitations on speech must be evaluated 'differ depending on the character of the property at issue[.]'" *Frisby v. Schultz*, 487 U.S. 474, 479, 108 S. Ct. 2495, 2500, 101 L. Ed. 2d 420 (1988) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S. Ct. 948, 954, 74 L. Ed. 2d 794 (1983)). . . .
>
> When a public forum is at issue, the analysis further turns on whether the challenged measure distinguishes between prohibited and permitted speech on the basis of content. *Frisby*, 487 U.S. at 481, 108 S. Ct. at 2500. A state may enforce regulations of time, manner and place which are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45, 103 S. Ct. at 955. On the other hand, content-based restrictions are permissible only if they are "'necessary to serve a compelling state interest,'" *Burson v. Freeman*, 504 U.S. 191, 198, 112 S. Ct. 1846, 1851, 119 L. Ed. 2d 5 (1992) (plurality) (quoting *Perry*, 460 U.S. at 45, 103 S. Ct. at 954), and narrowly drawn to achieve that end, *Perry*, 460 U.S. at 45, 103 S. Ct. at 954, or are limited to

"constitutionally proscribable content," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383, 112 S. Ct. 2538, 2543, 120 L. Ed. 2d 305 (1992) (emphasis omitted).

*Price v. State*, 622 N.E.2d 954, 965 (Ind. 1993) (first omission original to *Price*).

[18] The parties here vigorously debate whether the use of any and all phone lines into the Indiana Statehouse constitutes the use of a public forum, and whether the State's argument in the trial court precludes the State from arguing on appeal that those phone lines are not public forums. We need not decide those questions in this appeal. Assuming for the sake of argument that phone lines into the Indiana Statehouse are a public forum, we nonetheless hold that the State's charges against Stone are constitutional under the First Amendment.

[19] Again, "[w]hen a public forum is at issue," or, as here, is assumed to be at issue, the First Amendment analysis "turns on whether the challenged measure distinguishes between prohibited and permitted speech on the basis of content." *Id.* As the court in *Price* explained:

> The principal inquiry in determining whether a statute is content-neutral or content-based is the state's purpose for enacting it. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed.2 d 661 (1989). A regulation that serves purposes unrelated to the content of expression is deemed neutral, "even if it has an incidental effect on some speakers or messages but not others." *Id.* In essence, "[g]overnment regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Id.* (emphasis in original).

*Id.* at 965-66 (alteration original to *Price*).

[20] The harassment statute on which each of the State's seven charges against Stone is based states in relevant part as follows: "A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication . . . makes a telephone call, whether or not a conversation ensues . . . commits harassment, a Class B misdemeanor." I.C. § 35-45-2-2(a). That statutory language does not distinguish between prohibited and permitted speech on the basis of content. Rather, the language of the harassment statute is readily justified without reference to the content of the regulated speech—the state's purpose for enacting the harassment statute was to prevent a person from using a telephone with the intent to harass, annoy, or alarm others and with no intent of a legitimate communication. *See Price*, 622 N.E.2d at 966. The statute is expressly framed around the speaker's intent, not around the content of his speech. *See* I.C. § 35-45-2-2(a). Accordingly, the statute on its face is content-neutral.

[21] The State may enforce content-neutral regulations of speech in a public forum when those regulations are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Price*, 622 N.E.2d at 965 (citing *Perry*, 460 U.S. at 45). "To be narrowly tailored, a statute need not employ the least restrictive or least intrusive means of accomplishing the governmental purpose." *Id.* at 966 (citing *Ward*, 491 U.S. at 798). "Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial governmental interest that would be

achieved less effectively absent the regulation.'" *Id.* (quoting *Ward*, 491 U.S. at 799) (omission original to *Price*).

[22] There is a substantial public interest in protecting everyone, including government employees, from telephone harassment, and our legislature enacted Indiana Code Section 35-45-2-2(a) for that purpose. The statute does not apply where the speaker intends to engage in legitimate communication, even if the content of that communication is rude or impolite. And "intent is a question of fact under Indiana case law." *Horseman v. Keller*, 841 N.E.2d 164, 167 (Ind. 2006). As the harassment statute is focused on the speaker's intent, and Stone's intent here is an open question of fact, dismissal of the State's charges under Trial Rule 12(B)(6) would have been inappropriate.

[23] Accordingly, assuming for the sake of argument that Stone's communications occurred in a public forum, the harassment statute is a valid, content-neutral regulation of Stone's speech in that forum. We therefore affirm the trial court's denial of Stone's motion to dismiss the State's charges against him under the First Amendment.

### Article 1, Section 9

[24] We next turn to Stone's argument that the State's charges against him are prohibited under Article 1, Section 9 of the Indiana Constitution. Article 1, Section 9 states: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever; but for the abuse of that right, every person shall be

responsible." In reviewing an argument under Article 1, Section 9, we employ "a two-step inquiry": first, we "determine whether state action has restricted a claimant's expressive activity"; and, second, we "decide whether the restricted activity constituted an 'abuse' of the right to speak." *Williams v. State*, 59 N.E.3d 287, 292 (Ind. Ct. App. 2016) (quoting *Barnes v. State*, 946 N.E.2d 572, 577 (Ind.), *aff'd on reh'g*, 953 N.E.2d 473 (2011), *superseded by statute on other grounds*, *see Cupello v. State*, 27 N.E.3d 1122, 1124 (Ind. Ct. App. 2015)).

[25] In other words, our first question here under Article 1, Section 9 is whether Stone's speech was protected political speech. In the trial court, he argued that it was and, in response, the State conceded that it was. However, on appeal, the State argues that Stone's speech was not protected political speech under Article 1, Section 9. Thus, Stone argues that the State is precluded from making that argument on appeal and that our review must be framed around the State's concession in the trial court.

[26] We reject Stone's argument that we are bound by the State's concession in the trial court for two reasons. First, our review of the issues in this appeal is *de novo* and requires us to consider, for ourselves, the State's charges and the corresponding probable-cause affidavit on their face. *See, e.g.*, *Woods v. State*, 980 N.E.2d 439, 443-44 (Ind. Ct. App. 2012). Second, Stone carried the burden of proof in the trial court on his motion to dismiss, and that burden included demonstrating that his speech was protected political speech. *See, e.g.*, *Williams*, 59 N.E.3d at 293-94. Whatever the State's response to that argument may have been to the trial court, on appeal the State is permitted to assert that Stone failed

to meet that burden in the first instance, and we will review that argument accordingly.

[27]    And we hold that a reasonable trier of fact could conclude from the evidence that Stone's speech was not political. As we have explained:

> Where, as here, the defendant is not the original subject of a police investigation, the defendant demonstrates that [his] expression was unambiguous political speech when [he] shows that the focus of [his] speech exclusively concerned government action. Such speech must both be directed at state actors and refer to state actors or their conduct. Speech directed toward a private party or that refers to a private party, or the conduct of a private party, is politically ambiguous for purposes of an affirmative defense under art. 1, sec. 9. And *when the focus of speech is politically ambiguous, a reasonable fact-finder may reject the asserted affirmative defense*.

> If the defendant does not meet [his] burden of showing that [his] speech was unambiguously political, the State's impairment of [his] speech—e.g., the defendant's arrest . . . —is constitutional so long as the State acted rationally in impairing the speech.

*Id.* at 289-90 (emphasis added; footnote omitted). Thus, "expression that is directed toward a private party or refers to the conduct of a private party, even if in part, does not demonstrate protected political expression" under Article 1, Section 9. *Id.* at 293. Likewise, "speech in which the speaker refers to him- or herself, even when prompted by a [state actor's] conduct or statements, and even when coupled with political statements, permits a reasonable fact-finder to conclude that the focus of the entirety of the speech is ambiguous and,

therefore, not political." *Id.* at 294. In other words, where speech is at least in part not germane to a public issue, a trier of fact may find the speech as a whole not protected by Article 1, Section 9. *See id.*

[28] Stone's speech was not unambiguously political as a matter of law. At least once in each of the seven charged instances, Stone referred to himself. In particular, and among other things, in each of the seven phone calls on which the State's charges are premised, Stone referred to himself as the subject of a vast governmental conspiracy. Even if those comments are coupled with political statements, a reasonable fact-finder could conclude from them that "the focus of the entirety of the speech" for each charge "is ambiguous and, therefore, not political." *Id.* Thus, the State acted rationally in charging Stone, and the State has stated valid charges against Stone under Article 1, Section 9. We therefore affirm the trial court's denial of Stone's motion to dismiss under that provision.[1]

## Conclusion

[29] In sum, we affirm the trial court's denial of Stone's motion to dismiss the State's seven charges against him under the harassment statute. Stone has a constitutional right to petition the government and, to that end, to engage in

---

[1] On remand, the trier of fact may conclude that any of the following three scenarios is true: that Stone's speech was not political and therefore not protected under Article 1, Section 9; that Stone's speech was political but not protected because it "amounted to a public nuisance such that it inflicted particularized harm analogous to tortious injury on readily identifiable private interests"; or that Stone's speech was political and protected under Article 1, Section 9. *See Williams*, 59 N.E.3d at 293 (quotation marks and brackets omitted).

political speech. But there is a question of fact whether he abused that right when he confronted numerous State employees with ad hominem verbal attacks. Specifically, the question under the statute is whether Stone's comments were merely annoying or impolite, but with a legitimate intent to communicate, or whether his hostile verbal attacks on State employees were intended to harass, annoy, or alarm others and, as such, went beyond a legitimate inquiry, comment, or criticism of government policy or administration. Thus, we decline to hold under Trial Rule 12(B)(6) that the facts alleged are legally insufficient to support the charges under any set of circumstances or that Stone's phone calls to State employees were per se political speech.

[30] The State's charges allege reasonable time, place, and manner restrictions to Stone's speech under the First Amendment, and a reasonable fact-finder could conclude that the totality of the evidence supporting each charge demonstrates that Stone's speech was not unambiguously political and is, therefore, not protected under Article 1, Section 9. We therefore affirm the trial court's denial of Stone's motion to dismiss.

[31] Affirmed.

Robb, J., concurs.

Baker, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kiel Stone,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | Court of Appeals Case No.<br>18A-CR-2427 |

**Baker, Judge, concurring in result in part.**

I fully concur in the portion of the majority opinion dealing with the First Amendment to the United States Constitution. And while I concur with the result reached by the majority under Article 1, Section 9 of the Indiana Constitution, I would reach that result in a different manner.

I believe that whether Stone's speech was political is a far closer question than the majority acknowledges. While often—or perhaps always—abusive and paranoid, Stone's many calls addressed a traffic violation program, pro bono legal assistance, and, frequently, the treatment of citizens by the state

government.  Under these circumstances, I believe that a reasonable person could conclude that at least some of Stone's speech was political.

[34]     Therefore, I would accept for argument's sake that Stone's speech fell under the purview of Article 1, Section 9.  That same section, however, provides that "for the abuse of" the freedoms of speech, thought, and opinion, "every person shall be responsible."  I have little difficulty determining that a reasonable factfinder could only conclude that Stone's speech was an abuse of the rights provided for by Article 1, Section 9.  Thus, while I respectfully disagree with its analysis, I agree with the majority that we should affirm.